B. F. WEYMER, Appellant, v. THE BELLE PLAINE BROOM
Co., Appellee.

**Master and servant:** EXTRA COMPENSATION : EVIDENCE.  In this suit
by the discharged manager of a factory, for alleged services
rendered outside of his contract, the evidence is held to show
that the services were either paid for, or were voluntarily ren-
dered without expectation of compensation, and a directed ver-
dict for defendant is sustained.

**Same:** IMPLIED SKILL OF EMPLOYEE : NEGLIGENCE : DAMAGES.  An em-
ployee impliedly agrees that he has a reasonable amount of skill .
in the work and that he will exercise a reasonable amount of
care; and he is liable in case of damage to his employer arising
from his lack of skill or his negligence; but where the damages
shown as a result of his negligence are wholly conjectural and
speculative, as in this case, no recovery can be had.

*Appeal from Benton District Court.*—HON. J. M. PARKER,
Judge.

WEDNESDAY, JULY 5, 1911.

ACTION to recover for extra time or extra services
claimed to have been rendered defendant, while in its em-
ploy as manager.   Claim was also made for some other
items, to which reference will be made during the course
of the opinion.   Defendant denied plaintiff's claims, and
pleaded full payment and settlement for all services ren-
dered.   Other defenses were also interposed which, insofar
as material, will be mentioned as we proceed.   Defendant
also pleaded a counterclaim for damages against the plain-
tiff, due to his mismanagement of defendant's business,
his want of attention to, and negligence in, the conduct of
said business while he (plaintiff) was acting as manager
thereof.   On these issues the case was tried to a jury, re-

sulting in a directed verdict, which, in effect, dismissed plaintiff's petition and also defendant's counterclaim, and both parties appeal. As plaintiff first perfected his appeal, he will be called appellant. *Affirmed.*

*Thomas H. Milner,* for appellant.

*C. Nichols* and *C. W. E. Snyder,* for appellee.

DEEMER, J.—Defendant is a corporation engaged in the manufacture of brooms at the city of Belle Plaine. In January of the year 1907 it employed plaintiff to act as manager of its manufacturing department for the term of five years. By the terms of the agreement plaintiff was to receive the sum of $2.50 per day, and in addition at the end of each year one-fourth of the net profits of that year. Plaintiff was given authority to employ and discharge men, and defendant had power to terminate the contract at any time on six months' notice to plaintiff, in the event that the enterprise should show a loss. Plaintiff immediately entered upon the discharge of his duties and so continued until May 20, 1909, when he claims defendant summarily discharged him.

This action was brought June 15, 1909, and in it plaintiff seeks to recover upon *quantum meruit* for services rendered, not under the contract, but apart therefrom, on the theory that they were not covered by the contract, but were rendered at defendant's instance and request. He also asked compensation for the use of a horse which he claimed he furnished to defendant for use in its business, and also asked to recover the value of services performed by his (plaintiff's) minor son. Defendant denied that plaintiff rendered any extra services, claimed that whatever he did was under his contract as manager, and that for all services rendered he has been paid, and that his account has been settled in full. It admitted

the use of the horse by plaintiff, but denied that such· use was at its request, and says that plaintiff voluntarily used the animal for his own purposes, without at any time intending to charge therefor. It admitted that it employed plaintiff's son in its factory, but says that he had been fully paid for all services rendered; that payments were made on plaintiff's O. K.'s, and that plaintiff is now estopped from making any claim for work, extra or otherwise, done by the son. Defendant also filed a counterclaim in the sum of $1,000 for damages due it because of plaintiff's negligence and mismanagement of its (defendant's) business, his absence from his post, failure to follow defendant's instructions, and antagonizing them in their business. Such were the issues, and after hearing all the testimony the trial court directed a verdict for defendant, thus dismissing both the petition and the counterclaim. Appellant's argument deals solely with the proposition that the court was in error in dismissing the petition; the claim being that the testimony was sufficient to support one or more of the claims made therein. On its cross-appeal defendant insists that its counterclaim should have been submitted to the jury.

I. The essence of plaintiff's claim is that while he was employed as manager of the factory defendant sent him out upon the "road" to select and buy broom corn, and to sell and dispose of the manufactured product. In these capacities he claims to have traveled in Kansas, Oklahoma, Illinois, Minnesota, South Dakota, and perhaps some other states. During all of these times he claims to have been acting as defendant's manager, and admits that he rendered bills to defendant for the sum of $2.50 per day, and also included therein his expenses. These bills were rendered, from time to time, as the services were performed, and plaintiff was each time paid the amount thereof. Moreover, except for the first few weeks while plaintiff was performing what are

1. MASTER AND SERVANT: extra compensation: evidence.

now claimed to be extra services, for which he should have additional compensation, he was paid fifty cents per day more than his agreement called for; he (plaintiff) having demanded this increase on account of the work he was doing. Not until after his discharge did plaintiff make any such claims as were included in his petition. He did present his bills for compensation and expenses, and these bills were promptly paid. Again plaintiff claims extra compensation for time employed about defendant's factory in writing shipping tags, claiming that this was no part of his duty as manager, and that he should have pay for this work as an extra. These items were not included in his bills, and nothing was heard of them until this action was commenced. Plaintiff employed his two sons to work for defendant, and having a horse and light wagon he and the boys used it to carry them from their homes to and from the factory. This was four times per day. The horse and wagon were also at times used to haul broom corn and brooms to and from the factory. Plaintiff used the "rig" as he pleased and when he pleased, but never made any claim for the use thereof until after his discharge by defendant. There is no claim that defendant ever requested the use of the horse, although, through its officers, it knew that the outfit was used at times in the conduct of its business. Nothing was ever said about it, however, in any bills rendered by plaintiff during the time the horse and wagon were being used.

The other claim presented by plaintiff arises upon this state of facts: One of plaintiff's sons was employed in the defendant's factory, his name was upon the payroll, and he was paid for his services from time to time; plaintiff "O. K.ing" the bills. Plaintiff now claims that while this minor son was working for the defendant he (the son) taught other employees how to run the stitcher—a machine which sewed the brooms—and that for this he (plaintiff) should have compensation; the son being a minor,

and he (the son) being under no obligation to teach others how to do work. This, like other claims, made its appearance after the son had been fully paid for his time, and after plaintiff's discharge. Indeed, the record shows that checks were issued after the payroll had been O.K.'d by plaintiff, and the checks issued to his sons went through plaintiff's hands, and were by him delivered to the sons. Plaintiff was a director and officer of the defendant company, was present at many, if not most, of the meetings of the board, heard the financial statements read and examined them many times, and never did he intimate at these times that defendant was indebted to him upon the claims he now makes, which, according to the petition, amounted to something like $2,110. So much for plaintiff's claims.

Upon such a state of facts it is difficult to adduce an argument stronger than the facts themselves, disclosing the absolute want of merit in any of the items upon which the suit is brought. Plaintiff's duties as defendant's manager were not very accurately fixed. He entered upon the performance thereof and did the work for which he is now insisting upon extra compensation, without any thought, so far as defendant knew, that he was to have more than his $2.50 per day, soon increased to $3, and his expenses away from home. There was, as we believe, no intent on plaintiff's part to demand his entire compensation, as provided in the contract, while acting as manager, and at the same time charge or receive the usual and ordinary compensation for services upon the road. Plaintiff himself treated his services either as being within the terms of his contract, or as a substitute therefor. He rendered his bills, which were for a time put in as expenses, and these bills were paid. To now allow him an extra amount would undoubtedly result in double compensation. All his claims seem to be an afterthought, for they did not come to light until after his discharge. It seems to us very clear that

insofar as plaintiff's claim for his own time is concerned he has been fully paid therefor. As to the use of the horse and wagon, this use seems to have been entirely voluntary on plaintiff's part, without thought of compensation therefor. Defendant never requested the use of the horse, and while its officers knew that the horse and wagon were used at times in connection with the business, it also knew that plaintiff was making no claim to compensation for this use. The claim to extra compensation for work done by the minor son has no thread to hang on. The man who, it is claimed, the son taught to use the machine had worked with it some time before the boy claims to have become teacher. Moreover, if he did impart valuable information to the other employees, it was while he was being paid for his time by defendant, and without any request from defendant or any of its officers. Although many bills were made for time, and plaintiff received the checks due to his son and delivered them to the boy, no thought of extra compensation seems to have entered the heads of either until plaintiff's discharge. Insofar as plaintiff's case is concerned, there was nothing to submit to a jury. Had a verdict been rendered for him under the testimony, it would have been the duty of the court to have set aside such verdict, as without substantial support in the testimony. *Meyer v. Houck,* 85 Iowa, 319; *Converse v. Morse,* 149 Iowa, 454.

II. Did the court err in refusing to submit defendant's counterclaim to a jury? The chief complaint is that the plant made no money under plaintiff's management; that during the latter end of the period for which he worked plaintiff took no interest in the work; did not get to the factory until 9 a. m., when he should have been there at 7 a. m.; and did not get around after luncheon until after 2 p. m. Defendant also introduced testimony as to comparative results under plaintiff's management, and after

2. SAME: implied skill of employee: negligence: damages.

it had discharged him and taken the management into its own hands, and managed the same by its board of directors. The damages asked are for plaintiff's failure to perform and keep his contract with defendant, and for his negligence in performing his duties. It is true, of course, that one who enters the employ of another impliedly agrees that he has a reasonable amount of skill in the work, and that he will do the work with a reasonable amount of care, and in case of damage to the employer arising from unskillfulness or negligence he is liable. *Woodrow v. Hawving,* 105 Ala. 240 (16 South. 720). But an employee is not liable for mere errors in judgment. *Page v. Wells,* 37 Mich. 415.

One of the chief difficulties with defendant's counterclaim is that it made no complaint of the character of plaintiff's work until a short time before his discharge, and that it paid him, without any diminution of his wages or claim of offset, down to the date of discharge. Moreover, while it showed plaintiff's failure to keep regular hours, it did not show his incapacity for the work, or that he did not use reasonable skill in what he undertook to do. All that it showed in this connection was that plaintiff did not get results, and that when it discharged plaintiff and undertook to do the work through others it did have a margin of profit. Whether or not conditions were at all times the same, material and labor of the same cost, demand and selling price the same, does not sufficiently appear. For aught that appears, save as to the keeping of regular hours, the difficulties in plaintiff's management may have been due to lack of business skill, or to errors in judgment. Granted there was enough testimony to take the case to the jury on the question of plaintiff's negligence, we still think the trial court was right in directing that no recovery could be had on the counterclaim, for the reason that the damages shown were wholly conjectural and speculative. It takes rather a strong showing in such a case to hold a servant or employee liable for failure of

an enterprise, and even with failure shown courts are reluctant to charge all the results to the employee. So many elements enter into the question of successful management and profits from any venture that courts naturally are very conservative when it comes to charging results to an employee.

Our conclusion, after carefully examining the whole record, is that the trial court was right in directing a verdict for defendant.

The judgment must therefore be, and it is, *affirmed*.