CHARLES F. FERRIS, JR., appellee, v. EMPLOYERS MUTUAL CAS-
UALTY COMPANY, appellant.

No. 50988.

(Reported in 122 N.W.2d 263)

JUNE 11, 1963.

REHEARING DENIED SEPTEMBER 17, 1963.

Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, and Guthrie & Blackburn, of Webster City, for appellant.

McCarville & Bennett, of Fort Dodge, for appellee.

THOMPSON, J.—This case is a by-product of Ferris v. Riley, 251 Iowa 400, 101 N.W.2d 176. In that case, in which Ferris claimed damages from Riley arising out of an automobile collision, the final judgment was for the plaintiff in the sum of $55,000. The coverage limit in Riley's liability policy with the defendant insurance company was $10,000. After the trial of the original case in the district court and appeal, all of which resulted in the judgment above referred to, the present defendant, which will hereinafter be known as the insurer, paid in the policy limit and costs, leaving $45,000 unpaid on the judgment. Execution was issued against Riley and returned unsatisfied,

and it fairly appears that he has no assets from which any sum can be recovered. Thereupon a receiver was appointed for Riley's property.

Ferris then brought his action against the insurer, his petition being in three divisions. The first was based upon contract; the second, upon bad faith; and the third, upon negligence. There is no merit in the claim of any contract liability as between Ferris and the insurer, it is not argued here, and we give it no further attention.

Riley's receiver by petition of intervention made common cause with the plaintiff. The plaintiff claims the right of action against the insurer under section 516.1 of the Code, which we quote: "516.1 Inurement of policy. All policies insuring the legal liability of the insured, issued in this state by any company, association or reciprocal exchange shall, notwithstanding any other provision of the statutes, contain a provision providing that, in event an execution on a judgment against the insured be returned unsatisfied in an action by a person who is injured or whose property is damaged, the judgment creditor shall have a right of action against the insurer to the same extent that such insured could have enforced his claim against such insurer had such insured paid such judgment."

The policy in question here contained the required provision.

Whether this is sufficient to authorize an action such as this for recovery in excess of the policy limits we do not decide, because it is not argued by the defendant. Perhaps this is because of the petition of intervention, brought in behalf of the insured, in whose behalf such an action, if supported by the facts, would of course lie. See Wellman v. Hawkeye-Security Insurance Co., 250 Iowa 591, 94 N.W.2d 761. The defendant meets plaintiff's claim squarely by denying that there was any bad faith or negligence on its part sufficient to generate a fact issue.

■■ I. Some governing principles of law must first be considered and settled. The case was tried at law to the court; and so its findings of fact, if supported by any substantial evidence, are binding upon us, unless in arriving at them the court erred in its rulings on evidence or in other respects upon ques-

tions of law. Before the defendant will be entitled to a reversal with directions, as asked, it must appear that it should have been given a directed verdict in the trial court, as requested.

The burden was upon the plaintiff to show bad faith, including negligence as a possible factor therein. In an able article in 7 Drake Law Review, 23-40, it is said: "The cases are quite uniform in holding that the burden of proof is upon the insured to prove negligence or bad faith, and not upon the insurer to prove lack of it." In Berk v. Milwaukee Automobile Insurance Co., 245 Wis. 597, 601, 15 N.W.2d 834, 836, it is held: "Bad faith is a species of fraud, and the evidence to sustain a finding thereof must be clear, satisfactory and convincing." See also Cowden v. Aetna Casualty and Surety Co., 389 Pa. 459, 471-473, 134 A.2d 223, 229. This language is used in Maryland Casualty Co. v. Cook-O'Brien Construction Co., C. C. A., 8th Cir., 69 F.2d 462, 466: "The doctrine that fraud or bad faith is never presumed, but must be proven, is directly applicable." This was quoted with approval by the same court in Frank B. Connet Lumber Co. v. New Amsterdam Casualty Co., 236 F.2d 117, 126. Whether the evidence must be clear, satisfactory and convincing, as the Wisconsin and Pennsylvania Supreme Courts have held, we do not now decide. It is sufficient here to say that the burden of proof is upon the plaintiff.

Also, it must be pointed out that plaintiff's rights are to be measured by those of Riley as against the defendant-insurer. The statute, section 516.1, supra, and the provisions of the policy, if applicable at all here, do no more than place the plaintiff in Riley's position. As the case is presented to us if Riley would have been entitled to recover an excess policy judgment, the plaintiff would likewise be so entitled; if Riley could not recover, neither can the plaintiff. It should be noted that the trial court made no findings of fact and entered no judgment on the petition of intervention filed by Riley's receiver. It merely said that in view of its finding for the plaintiff, the petition of intervention was moot.

II. We think it necessary that we determine at this point whether an excess recovery action must be based upon bad faith, or upon negligence, or upon both. As the Drake Law Review

article above referred to points out, there is great confusion in the courts at this point. Some adopt the bad faith test; some the negligence test; and some combine features of both. Insurer's Liability Exceeding Policy Limits, 7 Drake Law Review 25, 26, 27. Many cases do not distinguish which test is being followed, and some erroneously refer to what are really negligence tests as bad faith. It would be impossible to analyze the many cases which have used one test or the other, or a combination of both.

■■ We think our own case of Henke v. Iowa Home Mutual Casualty Co., 250 Iowa 1123, 97 N.W.2d 168, has committed us to the rule that the test is one of bad faith, but that some negligences may be material on that issue. We said: "Failure to do so [to use care and diligence in investigating the case] will be held negligence and will have an influence on the issue of bad faith." Loc. cit. 250 Iowa 1131, 97 N.W.2d 174. We think this statement should be modified to the extent that not every negligence of the insurer should be held evidence of bad faith. It is only acts of negligence that show or permit an inference of indifference to or disregard of the interest of the insured that can fairly be said to support a charge of bad faith.

III. Some statement of the evidence adduced in the instant case now becomes material. There is little factual dispute. While the original case of Ferris v. Riley was pending, there were various negotiations for settlement. An offer of settlement for $10,000, the exact policy coverage, was made by the plaintiff, and was met with a counteroffer of $7500 by the defendant. At the time the trial started, the plaintiff offered to accept $8500; $8000 was offered and declined. While the case had been investigated by agents for the defendant-insurer, great reliance was placed upon the company's attorney, John H. Mitchell, of Fort Dodge. Mr. Mitchell is a former attorney general of Iowa and has had a long and successful career as a practicing attorney, with much experience in the trial of negligence cases. The insurer depended much upon his judgment. When the matter was first placed in his hands, Mr. Mitchell contacted the defendant Riley, told him that he was counsel for the insurance carrier, that the claim might exceed the limits of Riley's coverage, and that he was free to engage his own counsel. Although Riley had

in fact consulted an attorney in Webster City in regard to a minor criminal charge growing out of the same collision, he elected to be represented by Mr. Mitchell in all civil matters connected with it. Nor has he expressed any dissatisfaction with Mr. Mitchell's services to this date.

Riley was not consulted about the settlement negotiations, except that he was present when the final offers of $8500 and $8000 were made, and so of course knew of them. He made no protest, and no request that the case be settled. In fact, his attitude was at all times, including the time of the trial of the second case, that he was in no manner at fault and should not have been found liable in any amount. He so testified. He was present during the first trial, consulted with Mr. Mitchell as to selection of the jury and handling of the witnesses, and is still satisfied with Mr. Mitchell's representation. Further facts will be referred to as they become relevant.

IV. The essential matters that must be shown in order to sustain a charge of bad faith, or negligence amounting to bad faith, are set out in 40 A. L. R.2d, page 171, annotation: Liability Insurer—Duty to Settle. There is little if any substantial difference in the terms of the policies considered in the numerous cases which have been decided in various jurisdictions. As in the case at bar, the insurer was always given control of the case, including litigation and settlement negotiations. The difference has been in the varying facts, with the several courts arriving at conflicting interpretations of the inferences to be drawn and the rules of law to be applied. It is impossible to reconcile the cases, and an attempt to analyze all of them would extend this opinion beyond possible bounds.

We shall consider the tests set out in 40 A. L. R.2d above referred to. First is this: "It may be indicative of either bad faith or negligence that the evidence as to liability and damages was strongly against the insured." In the case before us, the only evidence before the trial court was that Mr. Mitchell, who had full authority to settle within policy limits, realized the claimant's injuries were serious and might exceed the policy coverage. But he thought he could win the case before a jury. The collision was, in his view, an intersection one; and he had

not only the statement of Riley that he thought Ferris had not stopped at the intersection and had not yielded the directional right-of-way, but he knew the passenger in the Ferris car would testify for the defendant-insured that no stop was made by Ferris. In Berk v. Milwaukee Automobile Ins. Co., supra, 245 Wis. 597, 608, 15 N.W.2d 834, 839, it is said: "It was reasonable and natural that defendant should rely in the Kuhle case on the judgment and advice of its attorney." We agree, especially when as here the attorney was able and long experienced in the handling of this class of cases.

■ The plaintiff thinks that the fact the damages were likely to be above the policy limits shows bad faith. This is answered in the recent case of Olson v. Union Fire Insurance Co., 174 Neb. 375, 381, 118 N.W.2d 318, 322: "While it is true that the insurance company knew of the seriousness of the injuries sustained by Olson in the accident and would sustain a judgment for as much as $100,000, it was not bound to surrender its defense of nonliability to avoid being held for a judgment in excess of the limits of its policy. It cannot be held merely because its determination, honestly arrived at, proved to be erroneous in the light of subsequent events." The court there stressed the fact that the insured had at all times denied liability, even though he had demanded that the claim be settled. Here we have the same denial of liability, with no demand ever made that the insurer settle, and no protest by the insured because settlement offers, of which he knew, were not accepted.

■ The plaintiff's contention here amounts to the claim that because the insurer knew that a judgment, if obtained, might be well in excess of the policy limits, it was in bad faith in refusing to settle when it could have done so within the stipulated coverage. We agree with the Nebraska court that this alone is not sufficient to show bad faith. If the insurer in good faith believed that it could successfully defend, it was not bound to relieve Riley of all possible harm that might come from his failure to purchase insurance in an amount that would have protected him from heavy liability. Such insurance was available to him; he chose to carry only an amount which was small in the light of present-day dollar values and verdicts which are often returned

in negligence cases. He had no right to expect his insurer to make a settlement beyond what it honestly thought the situation required merely because he had not protected himself by adequate coverage. As the Pennsylvania Supreme Court appropriately remarked: "Was the defendant required to pay out $25,000 of its own money in order to compensate for Cowden's failure to carry adequate insurance?" Cowden v. Aetna Casualty and Surety Co., supra, 389 Pa. 459, 473, 134 A.2d 223, 229. We find no evidence that Mr. Mitchell was not in good faith in thinking that he could win the case before a jury. There was substantial evidence to support such a conclusion.

Next the annotation in 40 A. L. R.2d above referred to says that bad faith may be shown by the fact that the insurer recognized the advisability of settlement, but attempted to induce the insured to contribute thereto. There is no such showing here.

▇▇▇ The third ground for a finding of bad faith is thus stated in the annotation: "that insurer failed to properly investigate the claim so as to be able to intelligently assess the probabilities". Here the plaintiff asserts there was such failure. It is pointed out that there was no examination of the plaintiff by doctors acting for the company. Mr. Mitchell answers this by saying that he knew the doctors who had examined Ferris were capable and honest, and he accepted their report as to the seriousness of the injuries. We have pointed out above that even though the insurer knew the injuries were such as to warrant a verdict above the policy limits, it was not bound to abandon its good faith defense of nonliability. Again, the plaintiff urges that there were two eyewitnesses to the accident who were not discovered by the investigation made by the insurer. But one of these was not called in the case while the other testified by deposition some months before the trial. Again we find a cogent quotation with which we agree: "To sustain the position of respondent, it would be necessary for us to indulge in the presumption that ascertainable material evidence was not obtained by appellant, *and that the production of such evidence would have changed the verdict.*" (Italics supplied.) Burnham v. Commercial Casualty Insurance Co., 10 Wash.2d 624, 632, 117 . P.2d 644, 647. Whether the evidence of the witness who testified

by deposition should have been found by investigation, it was known to the insurer some months before the trial. Mr. Mitchell testified that he was not surprised by any evidence produced by the plaintiff. There is no showing that the verdict would have been changed by anything not disclosed by the investigation made.

Next the annotation states as a possible ground for finding bad faith that the insurer rejected the advice of its own attorneys. This was a material reason for our holding in Henke v. Iowa Home Mutual Casualty Co., supra, loc. cit. 250 Iowa 1137, 97 N.W.2d 177. In the case at bar, we have pointed out that the insurer's attorney in the exercise of an honest judgment decided there was a good chance of proving nonliability.

Further the annotation lists a failure to compromise persisted in after a trial judgment against insured. There is no evidence of such a refusal here. Finally, it is said that bad faith may be predicated on failure to inform the insured of a compromise offer. The insured, Riley, was present when the final offer was made. Again we point out that he made no request that it be accepted, and no protest because a settlement was not made; but at all times has insisted that he was not at fault.

V. The plaintiff stresses certain conclusions of the trial court which he thinks sound, and which were determinative of the case below. We think the court placed too great a burden upon the defendant. First, after pointing out that the insurer was in complete control of the litigation and had a duty to give equal consideration to the rights of the insured, it was held that offers to compromise which were within the policy limits and "which the Insurer knew to be reasonable" were rejected. The evidence is that the insurer, acting through its attorney, did not consider the offers reasonable, for reasons stated. While it may be in the light of what happened that Monday morning quarterbacks, as is their privilege and custom, disagree with the plays called on the previous Saturday afternoon, must we say that the signal caller was guilty of bad faith in choosing the plays as he did? Mr. Mitchell gave supportable reasons for his decisions not to accept the compromise offers; we are unable to agree he "knew they were reasonable."

Next the trial court said the insurer and its counsel "either knew or should have known that they had no more than an equal chance of winning the case * * *." Again there is the implication that we should judge the fairness of the decision not to settle by the result. We suggest that if we are to venture into the area of what counsel "should have known" in advance of the trial of a lawsuit as shown by the final outcome, by a jury's decision, we are requiring of him the gift of foretelling the future not often given to mankind. We know of no mortal who has been vouchsafed this power since the days of the Bible prophets; and as we understand it, these ancient seers had access to some inside information not presently available to counsel in damage cases. The court placed an unfair burden on the defendant here.

Following this, the court said there was failure to properly investigate and to learn of the two eyewitnesses. We have discussed this above. Also the court apparently thought that counsel failed to place sufficient emphasis upon his conclusion that there was a jury question on the negligence of his insured, Riley, and that Riley had been charged with being under the influence of intoxicating liquor. Again, this is a question of the fairness of Mr. Mitchell's determination that he could win the case to a jury. He knew that there was a charge of intoxication against Riley; but he also knew there was evidence that Ferris had also been drinking, and that Ferris had also been charged with a traffic violation. As he put it, the case involved some "unsavory characters" and he thought the balance would be at least equal on that score.

Finally the court seems to have concluded that there was a burden upon the insurer. What was meant by this "burden" is not clear. If it meant that the insurer had the burden to show good faith, it was in error, as we have pointed out in Division I above. However, the court said that even without this it would find against the defendant. We have also indicated our disagreement with this holding.

 VI. In the course of the foregoing opinion we have several times referred to the testimony of John H. Mitchell. Mr. Mitchell testified at length. Much of his testimony, after being received without objection, was made the subject of a

motion to strike "for the reason it is contrary to the facts and contrary to the record of the previous case which is introduced here as an exhibit in this case, a misstatement of the facts." Mr. Mitchell was testifying to the facts known to him and his reasons for believing that the case could be won. The court took the motion under advisement at the time it was made, but eventually struck much of Mr. Mitchell's testimony. Included in the stricken portion were Mr. Mitchell's analysis of the facts in the case and his evaluation of them, and his reasons for thinking that he could successfully defend the action. These were all material and important. We are dealing here with the issue of good or bad faith. This is a state of mind. It is determined by proof of conduct, but the owner of the mind may disclose its operations. City of Wakefield v. Globe Indemnity Co., 246 Mich. 645, 653, 225 N.W. 643, 645. With the issues as they were here, it was material and proper for Mr. Mitchell to testify why he considered the case as he did. Error is predicated upon the ruling of the trial court which struck the evidence on this point. The ruling was clearly erroneous, and would in itself require reversal; but since we have concluded the defendant's motion for directed verdict should have been granted, it is not necessary that reversal be based on the striking of the evidence.

However, since the evidence stricken is set out in the record, we are permitted to consider it in our evaluation of the case on the merits. Sjulin v. Clifton Furniture Co., 241 Iowa 761, 768, 41 N.W.2d 721, 726; Brown v. Schmitz, 237 Iowa 418, 424, 22 N.W.2d 340, 343; Iowa Electric Co. v. Home Insurance Co., 235 Iowa 672, 676, 677, 17 N.W.2d 414, 416, and citations. Mr. Mitchell was called as a witness by the plaintiff. His testimony not only entirely fails to aid the plaintiff in carrying the burden of proof, but we think goes far to entirely negate any claim of bad faith.

VII. The plaintiff, under his Brief Point One, states his position thus: "When there is a clear and definite evidence that a claim can be settled within the policy limits for a reasonable figure and when the proposal is not conditional, and insurer fails to settle, it is liable for bad faith." To support this, it must appear not only that the settlement proposition was reasonable,

but that the insurer had no fair basis for its judgment that it was not reasonable. We may not measure the reasonableness of the offer by the ultimate result of the litigation; it must be considered in the light of the case as it fairly appeared to the insurer and its authorized agents and attorneys at the time the offer was made. Whether Mr. Mitchell was mistaken in his judgment that he could successfully defend may be argued; but a mere mistake in judgment is not enough to show bad faith. Henke v. Iowa Home Mutual Casualty Co., supra, loc. cit. 250 Iowa 1130, 97 N.W.2d 173; Mendota Electric Co. v. New York Indemnity Co., 175 Minn. 181, 184, 221 N.W. 61, 62. The cases uniformly so hold.

Analogous to the question here considered is the rule that an employee is not liable for mistakes in judgment. "But an employee is not liable for mere errors in judgment." Weymer v. The Belle Plaine Broom Co., 151 Iowa 541, 547, 132 N.W. 27, 29, Ann. Cas. 1913A 451.

Many authorities are cited by the plaintiff which he thinks support his position. Most of them are distinguishable on the facts. For instance, in Johnson v. Hardware Mutual Casualty Co., 109 Vt. 481, 1 A.2d 817, a case much relied upon by the plaintiff, it appeared without dispute that counsel for the insurer anticipated an unfavorable verdict and advised his client that in view of the injuries sustained by the plaintiff it would be "a whopper". An attempt was also made to induce the insured to contribute to the settlement. See 1 A.2d at page 821. Many other cases cited by the plaintiff can be readily distinguished on the facts proven. We shall not take the time and space required to analyze them. We believe the law as we have set it out in this opinion contains the correct reasoning and are content to follow it.

The trial court should have granted the defendant's motion for directed verdict. The case is reversed and remanded with directions to dismiss plaintiff's petition and the petition of intervention and enter judgment for the defendant. —Reversed, with directions.

All JUSTICES concur.