Leota **KOPPIE**, Appellant,

v.

**ALLIED MUTUAL INSURANCE CO.,**
Appellee.

No. 55935.

Supreme Court of Iowa.

Sept. 19, 1973.

Prichard, Hanson, Doran & Bormann, Emmetsburg, for appellant.

Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellee.

Submitted to MOORE, C. J., and MASON, REYNOLDSON, HARRIS and McCORMICK, JJ.

REYNOLDSON, Justice.

Plaintiff Leota Koppie brought an "excess judgment" action against defendant insurance company (Allied), alleging Allied was guilty of bad faith in failing to settle plaintiff's claim against the company's insured. Trial court directed a defendant's verdict, plaintiff appeals and we affirm.

Allied issued a $10,000 limit automobile liability policy to Russell Dobson or Agnes Dobson. On March 1, 1968, the insured vehicle, while driven by Russell Dobson, came into collision with an auto driven by plaintiff.

On August 21, 1969, plaintiff sued Russell Dobson, alleging severe and permanent injuries, medical expenses of $622.30, car repair of $854.77, and praying for total damages in the sum of $28,977.07. Allied retained a law firm and sent Dobson the usual letter informing him the selected firm would defend the action, cautioning him of the possibility of a judgment above policy limits, and "[i]n the event you do not choose to retain your own counsel, the above named firm will defend the entire matter on your behalf."

Prior to trial Russell Dobson died. His wife Agnes Dobson, as administrator of his estate, was substituted as defendant. Upon trial the jury returned a plaintiff's verdict for $15,000. There was no appeal. Allied paid its $10,000 policy limit on the judgment. An execution against Dobson's estate for the balance was returned unsatisfied.

Plaintiff then instituted this litigation against Allied within the 180-day limitation. See § 516.3, The Code. Her petition alleged Allied's bad-faith failure to settle within policy limits. She asserted the company's rejection of plaintiff's pre-trial $5800 settlement offer was unreasonable because plaintiff had directional right of way prior to the intersectional collision and because she sustained a broken neck, pain and suffering and extensive hospital and medical expenses. Plaintiff further alleged Allied neither notified defendant-administrator of plaintiff's offer nor informed the administrator the case could be settled within policy limits.

In the case *sub judice* plaintiff introduced the pleadings and instructions in the foundation case as the only evidence to show how the collision occurred or the extent of plaintiff's injuries and damages. One of plaintiff's lawyers in the prior litigation testified the pre-trial courtroom negotiations aborted after plaintiff offered to settle for $5800, Allied countered with $5200, and neither would move further. Mrs. Dobson, testifying for plaintiff, said she was neither told of the $5800 offer nor informed the cause could be settled within policy limits. While she knew her husband had received the letter from Allied, she did not see it. Her husband told her he was going to leave it up to the insurance company. She understood from her husband's report to Allied the accident was plaintiff's fault. She testified she was informed of the policy limits when trial commenced and was aware negotiations were under way.

When plaintiff rested, trial court overruled defendant's motion for directed verdict. Defendant rested without introducing any evidence and renewed the motion. It was then sustained.

■ I. The sole issue before us is whether plaintiff's evidence was sufficient to generate a jury question on the issue of Allied's bad faith. See Henke v. Iowa Home Mutual Casualty Company, 250 Iowa 1123, 97 N.W.2d 168 (1959). Plaintiff's rights are to be measured by those of Dobson's estate against Allied. Ferris v. Employers Mutual Casualty Company, 255 Iowa 511, 122 N.W.2d 263 (1963); chapter 516, The Code.

■ Plaintiff's burden of proof is not to show Allied's alleged bad faith by clear, satisfactory and convincing evidence as indicated in trial court's ruling. Plaintiff's burden is to show bad faith by a preponderance of the evidence. Kohlstedt v.

Farm Bureau Mutual Insurance Co., 258 Iowa 337, 139 N.W.2d 184 (1965); Dairyland Insurance Company v. Hawkins, 292 F.Supp. 947 (S.D.Iowa 1968); rule 344(f)(6), Rules of Civil Procedure.

Plaintiff asserts there are three indicia which, combined, evidence such lack of good faith on Allied's part as to generate a jury question. These are failure to inform Mrs. Dobson of the $10,000 policy limit until time of trial, failure to notify her the suit could be settled for $5800, and failure to appeal the $15,000 judgment.

■ Under some circumstances failure to inform a fiduciary of policy limits might be a factor tending to show bad faith. Here, however, Mrs. Dobson was a named insured. As administrator of her husband's estate, both the policy and Allied's letter to her husband were presumably in her possession. There is no reason to presume Allied knew she was unacquainted with the policy terms. In any event, by trial time when negotiations were taking place, she did know the extent of the coverage.

■ In Kohlstedt v. Farm Bureau Mutual Insurance Co., 258 Iowa 337, 139 N.W.2d 184 (1965) we recognized an insurer's failure to appeal may be evidence of bad faith but held that factor inapplicable under those facts. There, as here, plaintiff introduced no testimony an appeal would have the slightest hope of success. We are not now inclined to encourage expansion of our appellate case backlog with utterly hopeless appeals brought to gain negotiating time. We hold Allied's failure to appeal the judgment constitutes no evidence of bad faith, in the absence of proof of any ground for appeal.

The most troublesome aspect of this case is Allied's failure to keep Mrs. Dobson informed of settlement negotiations, and the fact settlement could be reached within policy limits. This court in *Henke,* supra, recognized failure on the part of the insurer or its counsel to inform insured of settlement negotiations might indicate bad faith. See 7A Appleman Ins. L. & P., § 4712 (1962, Supp.1973). We held such conduct, standing alone, was not sufficient to create a jury issue.

We need not speculate whether this court, absent the *Kohlstedt* precedent and in light of present concepts of the insurer-insured relationship, would again reach the *Kohlstedt* result. The efforts of insurance companies to retain absolute contractual control of the litigation and to impose on the insured the duty of assistance and cooperation, coupled with the conflict of interest frequently arising when plaintiff's offers to settle are within policy limits, have led courts to an increasingly broader concept of the insurer's duty.

Many decisions have referred to such contractual provisions as creating a fiduciary relationship with the resulting duties that grow out of such a relationship. See, e. g. Gedeon v. State Farm Mutual Automobile Insurance Co., 342 F.2d 15 (3 Cir. 1965); Hazelrigg v. American Fidelity & Casualty Company, 241 F.2d 871 (10 Cir. 1957); American Fidelity & Cas. Co. v. All American Bus Lines, 179 F.2d 7 (10 Cir. 1950); American Fidelity & Casualty Co. v. G. A. Nichols Co., 173 F.2d 830 (10 Cir. 1949); Bollinger v. Nuss, 202 Kan. 326, 449 P.2d 502 (1969); Gray v. Nationwide Mutual Insurance Company, 422 Pa. 500, 223 A.2d 8 (1966). Plaintiff does not raise (and we are therefore not obligated to answer) the question whether the primary duty to make full disclosure which prevails in other fiduciary relationships applies here. See 3 Am.Jur.2d, Agency §§ 199, 200, pp. 580–81 (agent is a fiduciary, "The duty of an agent to make full disclosure to his principal of all material facts relevant to the agency is fundamental to the fiduciary relation of principal and agent."); 60 Am.Jur.2d, Partnership § 123, pp. 47–48 ("[T]he relationship of partners is fiduciary * * * each is required to make full disclosure of all material facts within his knowledge * * * ").

Without regard to the fiduciary analogy, a few jurisdictions nonetheless have held failure to keep the insured posted on settlement negotiations would alone make a submissible jury question on the issue of bad faith. Baker v. Northwestern National Casualty Co., 22 Wis.2d 77, 125 N.W.2d 370 (1963), 26 Wis.2d 306, 132 N.W.2d 493 (1965); Roberie v. Southern Farm Bureau Casualty Ins. Co., 250 La. 105, 194 So.2d 713 (1967). Most decisions, however, which have relied on insurer's failure to inform regarding negotiations, in holding for the plaintiff, have also relied on additional factors showing bad faith. Ging v. American Liberty Insurance Company, 423 F.2d 115 (5 Cir. 1970); Young v. American Casualty Company of Reading, Pa., 416 F.2d 906 (2 Cir. 1969), cert. dismissed, 396 U.S. 997, 90 S.Ct. 580, 24 L.Ed.2d 490 (1970); Herges v. Western Casualty and Surety Company, 408 F.2d 1157 (8 Cir. 1969); Ashbrook v. Kowalick, 332 F.Supp. 78 (E.D.Pa.1971); see cases cited in Annot., Liability Insurer—Duty to Settle, 40 A.L.R.2d 168, 216 (1955, Later Case Service, 1969, Supp.1973).

Modern decisions require the insurer (in the exercise of good faith) to view the settlement situation as if there were no policy limit applicable to the claim. When it does so, it views the claim objectively and renders equal consideration to the interests of itself and of the insured. Luke v. American Family Mutual Insurance Company, 476 F.2d 1015 (8 Cir. 1973); Young v. American Casualty Company of Reading, Pa., supra; Herges v. Western Casualty and Surety Company, supra; Ashbrook v. Kowalick, supra; General Accident Fire & Life Assur. Corp. v. Little, 103 Ariz. 435, 443 P.2d 690 (1968); Crisci v. Security Insurance Co. of New Haven, Conn., 66 Cal. 2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967); United States Fidelity & Guaranty Co. v. Evans, 116 Ga.App. 93, 156 S.E. 2d 809, aff'd, 223 Ga. 789, 158 S.E.2d 243 (1967); Bollinger v. Nuss, supra; Murach v. Mass. Bonding & Ins. Co., 339 Mass. 184, 158 N.E.2d 338 (1959); Lange v. Fidelity & Casualty Company of New York, 290 Minn. 61, 185 N.W.2d 881 (1971); Bowers v. Camden Fire Ins. Assoc., 51 N. J. 62, 237 A.2d 857 (1968); Kunkel v. United Security Ins. Co. of New Jersey, 84 S.D. 116, 168 N.W.2d 723 (1969); Tyler v. Grange Insurance Association, 3 Wash. App. 167, 473 P.2d 193 (1970); see Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv.L.Rev. 1136 (1954).

■ But in this case the record is wholly unsatisfactory to furnish any foundation to determine how Allied viewed the claim. Plaintiff did not pursue discovery procedures. There was no evidence from which the jury could determine the actual facts confronting Allied during negotiations, as opposed to facts alleged in the initial petition. There was no proof relating to Dobson's negligence, or plaintiff's contributory negligence and damages. The only evidence of Allied's alleged bad faith was its failure to inform the insured. This is not sufficient to generate a jury issue in the evidential vacuum present here. See Brochstein v. Nationwide Mutual Insurance Company, 448 F.2d 987 (2 Cir. 1971), cert. denied, 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 791 (1972).

Plaintiff urges us to adopt the concept of insurer liability cogently advanced as a dicta in Crisci v. Security Insurance Co. of New Haven, Conn., supra. In short, the *Crisci* proposed rule imposes strict liability for an excess judgment on an insurer who has rejected a settlement proposal within policy limits. However logical the rationale developed in support of that theory, it has not been followed in California nor in any other jurisdiction to this date. See Dumas v. State Farm Mutual Automobile Ins. Co., 111 N.H. 43, 274 A.2d 781 (1971). In the absence of opportunity for development of countervailing considerations, we now decline to embark on that uncharted course.

II. Our affirmance in this case is not to be construed as any indication of the communication responsibility of the lawyer retained by the insurer to represent the insured. Careful study should be given to the Iowa Code of Professional Responsibility for Lawyers, EC 5–14 through EC 5–19, p. 16; DR 5–105, p. 18; and EC 7–8, p. 21. Where there is a settlement available within policy limits and the insured is otherwise unrepresented, such a lawyer walks a narrow and dangerous path. See *Lange v. Fidelity & Casualty Company of New York, supra;* and *Lysick v. Walcom,* 258 Cal.App.2d 136, 65 Cal.Rptr. 406 (1968), where counsel's potential liability for the excess judgment was recognized.

We find no reversible error. Trial court's judgment is affirmed.

Affirmed.