James E. TRASK, Appellant,

v.

**IOWA KEMPER MUTUAL INSURANCE
COMPANY, Appellee.**

No. 2–57250.

Supreme Court of Iowa.

Dec. 15, 1976.

Levinson & Enabnit, Mason City, for appellant.

Patterson, Lorentzen, Duffield, Timmons, Irish & Becker, Des Moines, for appellee.

Heard by MOORE, C. J., and MASON, UHLENHOPP, HARRIS and McCORMICK, JJ.

UHLENHOPP, Justice.

The pivotal question in this appeal is whether a liability insurer acted in bad faith in not accepting a third-party offer to settle for the policy limit. Two lawsuits are involved, the original damage action and the present one for the excess over the amount of the policy.

A truck driven by plaintiff James E. Trask collided with a car insured by defendant Iowa Kemper Mutual Insurance Company. Trask sustained personal juries. The driver of the car died in the collision. Trask sued Kemper's insureds for $96,000 for personal injuries, and the truck owner sued them for property damage. The insureds—the car driver's personal representative and the car owner—sued Trask and the truck owner for substantial damages for the death of the car driver and for property damage. The parties tried these claims together. Prior to trial of that law-

suit, Trask offered to take $25,000 in settlement. Kemper did not accept the offer. In that lawsuit Trask obtained judgment for $37,000 against Kemper's insureds, and the jury denied the claims of the insureds. We affirmed the judgment. *Trask v. Gibbs,* 200 N.W.2d 565 (Iowa). Kemper paid $25,000 on the judgment.

Trask's execution for the balance was returned unsatisfied, and he thereupon sued Kemper for $12,000—the present action for the excess. On Kemper's motion at the conclusion of Trask's evidence, the trial court directed a verdict for Kemper on two bases: (1) Kemper's insureds own any claim for excess against Kemper, and (2) Trask did not introduce substantial evidence that Kemper acted in bad faith in handling the Trask claim.

Trask appealed, asserting that the two bases are untenable.

■ I. *Trask's Right to Sue.* Trask claims he is entitled to sue for the excess under our direct action statute, § 516.1, Code 1975:

> All policies insuring the legal liability of the insured, issued in this state by any company, association or reciprocal exchange shall, notwithstanding any other provision of the statutes, contain a provision providing that, in event an execution on a judgment be returned unsatisfied in an action by a person who is injured or whose property is damaged, the judgment creditor shall have a right of action against the insurer *to the same extent that such insured could have enforced his claim against such insurer* had such insured paid such judgment." (Italics added.)

This statute constituted a part of the policy. 43 Am.Jur.2d Insurance § 289 at 350; 44 C.J.S. Insurance § 302 at 1214.

Kemper asserts any excess claim belongs to its insureds, and Trask did not acquire such claim by levy and sheriff's sale or in any other manner.

Kemper is right as a matter of common law. See *Steffens v. American Standard Ins. Co.,* 181 N.W.2d 174 (Iowa). But the legislature could cut across the procedural steps; it could provide that a third party need not go through a procedure such as levy and sale but may sue the insurer directly not only for the policy amount but also for the excess. This appears to be what our legislature did by the statutory language that the judgment creditor shall have a right of action against the insurer "to the same extent that such insured could have enforced his claim against such insurer . . .." The legislature used the unrestricted words "his claim," not his claim "under the policy." We see no basis for adding the latter three words by judicial decision. Giving the words "his claim" their ordinary meaning, they would encompass the amount of any excess the insured is entitled to recover. We hold Trask properly sued under the direct action statute. See *Koppie v. Allied Mut. Ins. Co.,* 210 N.W.2d 844 (Iowa); *Greer v. Mid-West Nat'l Fire & Cas. Ins. Co.,* 434 F.2d 215, n. 2 (8 Cir.); *Kleinschmit v. Farmers Mut. Hail Ins. Assn.,* 101 F.2d 987 (8 Cir.); *Turgeon v. Shelby Mut. Plate Glass & Cas. Co.,* 112 F.Supp. 355 (D.Conn.); *Auto Mut. Indem. Co. v. Shaw,* 134 Fla. 815, 184 So. 852. In suing under the statute, Trask proceeded on a claim of the insureds against Kemper which the statute permits him to enforce. Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv.L.Rev. 1136, 1176.

The trial court erred in upholding the first ground of Kemper's motion to direct a verdict in Trask's suit for the excess.

■ II. *Bad Faith.* We do not follow the scintilla rule; Trask had to introduce substantial evidence that Kemper acted in bad faith in handling the Trask claim. *Ellingson v. Kramer,* 255 Iowa 1257, 125 N.W.2d 777. We proceed to examine the evidence on liability and damages in Trask's original damage claim against Kemper's insureds as well as the conduct of the parties with respect to that claim.

■ As to liability of Kemper's insureds on Trask's damage claim, the evidence shows that Trask was driving a truck on a highway protected by stop signs. Kemper's

insured driver drove the car in question onto the highway and a collision occurred. The jury could find that the car driver failed to stop or yield. The exact place of collision was in dispute—either near the side of the highway where the insured entered or farther into the intersection. The district court in the collision case submitted to the jury negligence charges against the insured of failure to have control, failure to keep a lookout, and failure to stop and to yield. Against Trask, the district court submitted negligence charges of failure to have control, failure to keep a lookout, and excessive speed, but refused to let the insureds amend to allege Trask was negligent in failing to sound his horn. We upheld the district court in denying the insureds permission to amend. *Trask v. Gibbs, supra,* 200 N.W.2d 565 (Iowa).

As to Trask's injuries from the collision, the record shows that Trask had an existing arthritic condition, probably from prior accidents. Prior to the present events, Trask was in a motor vehicle accident in 1952 and sustained a low back sprain; in another one in 1956 and sustained a brain concussion, neck sprain, and fracture of the spinous processes of the sixth and seventh vertebrae; in a third one in 1958 and sustained a neck and shoulder sprain; and in a fourth one in 1966 and sustained a neck sprain. He had two other accidents but the injuries apparently were of no moment.

In the instant collision Trask received no fractures but sustained a brain concussion, a concussion of the left hip, and concussion and abrasions of the right elbow. He was hospitalized six to eight days, part of the time in Dubuque and part in Mason City, Iowa. His injuries cleared up except for head and neck ache and tingling in a thumb and finger. The ache was severe and persisted to time of trial of the damage case in August 1970. He was unable to work as a trucker up to the time of trial in 1970, and his medical expenses amounted to $1515.43. His physician had released him only for light work at time of trial. The physician opined that the collision aggravated pre-existing arthritis in the midcervical spine, a permanent condition. He thought that "the accident at least was a factor in the degree of progression of the arthritis." See *Woode v. Kabela,* 256 Iowa 622, 128 N.W.2d 241. As to the future, the physician did not expect surgery. He testified that Trask would be under a doctor's care for another six to eighteen months, and would have expense for drugs and office calls from $75 to $200.

Kemper retained competent counsel in the damage action, Reynolds, Kenline, Roedell, Breitbach & McCarthy, of Dubuque. Those counsel notified Kemper's insureds that Trask's action exceeded policy limits and that the insureds might have their own counsel. The insureds elected to have the Reynolds firm defend and present the insureds' own claims. That firm thoroughly investigated the case and also employed a reconstruction expert. The expert gave the opinion that the insured driver did not stop for the stop sign; that Trask could have been driving from 30 to 50 miles per hour and the insured from 10 to 35 miles per hour; and that if Trask thought the insured was going to stop because of low speed, he did not have time to react by the time he realized the insured was not going to stop.

The Reynolds firm kept the insureds advised throughout. No indication appears of dissatisfaction by the insureds with the Reynolds firm's conduct of the case or of any action by the insureds to collect the excess from Kemper. The insureds concurred in Kemper's not accepting Trask's offer to take $25,000.

After its investigation of the case, the Reynolds firm evaluated the Trask claim and concluded that an issue existed as to Trask's contributory negligence. During trial the firm made Trask an offer of $10,000 on Kemper's behalf. Presumably this offer would also have required Kemper's insureds to give up their own damage claims. Trask did not accept the offer and made no counter offer. Settlement negotiations progressed no further. Thereafter the jury awarded Trask $37,000, the insureds lost on their appeal, and Kemper paid its policy limit of $25,000.

In Trask's present suit against Kemper for the excess of $12,000 he introduced the testimony of three competent trial lawyers. One was the attorney for Trask's co-party, the truck owner, which sought recovery for truck damages, had a lien for workmen's compensation it paid Trask, and resisted the damage claims of Kemper's insureds. In the excess case trial, this attorney testified that from his investigation he believed the car driver was at fault and also that the car driver's personal representative could not recover damages. The other two attorneys evaluated the Trask claim subsequent to the verdict in the collision case. They both regarded the Trask claim as one of liability on the part of Kemper's insureds. One of them evaluated the Trask claim from $25,000 to $50,000, and the other evaluated it from $28,000 to $40,000 or $42,000.

Our principal decisions in this area of law are *Henke v. Iowa Home Mut. Cas. Co.,* 250 Iowa 1123, 97 N.W.2d 168; *Ferris v. Employers Mut. Cas. Co.,* 255 Iowa 511, 122 N.W.2d 263; *Kohlstedt v. Farm Bureau Mut. Ins. Co.,* 258 Iowa 337, 139 N.W.2d 184; and *Koppie v. Allied Mut. Ins. Co.,* 210 N.W.2d 844 (Iowa). See also Anno. 40 A.L. R.2d 168. In the *Henke* case, the insured drove his car at night at speeds of 85 to 95 miles per hour in heavy dust and fog. Evidence indicated he was racing another car. He went into a ditch and slid 213 feet, where he struck a culvert. One passenger was killed, one was seriously and permanently injured, and two more were seriously injured. The insurer had "$5000–$10,000" limits. The four plaintiffs offered to take $8000, of which another insurer would pay $500. Liability appeared clear and damages were substantial. The insurer's local attorney recommended settlement and indeed "pounded on the table" to get the insurer to pay. It refused. Trial of the first personal injury case resulted in a verdict of $25,000. The insurer paid $5000, leaving $5000 for the other three cases. An office memorandum of the insurer showed its local attorney then "felt that by going ahead and trying these cases that we were just throwing good money after bad besides involving further attorney fees. He [the attorney] was

of the opinion that the physical facts alone would be enough to defeat us in any of the other pending actions." The insurer's general supervisor of claims noted on the memorandum, "Our Atty re paying limits of 10,000 to settle all cases. I told him No! to try the other cases as we are only gambling with 5000.00." On such a record this court found substantial evidence of bad faith to support an award for excess, saying, "[D]efendant placed itself back of what it considered an impregnable wall of a five and ten thousand dollar policy limit, and in effect said: 'Let the insured, or as in this case the insured's estate, take the consequences.' Defendant was willing to 'gamble' as to its $10,000 but was indifferent as to the best interest of the insured." 250 Iowa at 1141, 97 N.W.2d at 179.

This court dealt with the question of the legal basis for liability for excess in the next case, *Ferris v. Employers Mut. Cas. Co.,* 255 Iowa 511, 122 N.W.2d 263. In *Henke* the court found substantial evidence of bad faith but considered negligence as it might bear on the existence of bad faith. In *Ferris* the court held:

We think our own case of *Henke v. Iowa Home Mutual Casualty Company,* 250 Iowa 1123, 97 N.W.2d 168, has committed us to the rule that the test is one of bad faith, but that some negligences may be material on that issue. We said: 'Failure to do so (to use care and diligence in investigating the case) will be held negligence and will have an influence on the issue of bad faith.' Loc. cit. 250 Iowa 1131, 97 N.W.2d 174. We think this statement should be modified to the extent that not every negligence of the insurer should be held evidence of bad faith. It is only acts of negligence that show or permit an inference of indifference to or disregard of the interest of the insured that can fairly be said to support a charge of bad faith. 255 Iowa at 516, 122 N.W.2d at 266.

The court also stated, "We are dealing here with the issue of good or bad faith. This is a state of mind." 255 Iowa at 522, 122 N.W.2d at 269. The court held that the

plaintiff in the excess action had the burden of proof.

In *Ferris* the local attorney, a trial lawyer of experience, thought he could win the case although some unfavorable evidence existed on liability and injuries were substantial. The policy limit was $10,000. The injured person offered to take $8500 and the insurer offered to pay $8000. Negotiations went no further. The jury returned a verdict against the insured in the personal injury action for $55,000. The insurer paid $10,000 and suit was brought for the excess of $45,000. The excess case was tried without a jury and the trial court allowed full recovery against the insurer. This court reversed for want of substantial evidence of bad faith.

The court reached the same result in *Kohlstedt v. Farm Bureau Mut. Ins. Co.,* 258 Iowa 337, 139 N.W.2d 184. There the policy limit was $15,000. The insurer made a pre-verdict offer of $10,000. The injured person offered to take $15,000, which the insured demanded the insurer pay. The insurer did not do so, negotiations went no further, and the damage verdict was $25,-000. The insurer knew in advance that the case would probably go to the jury and that the injured person's damages were serious. The insurer and its counsel, as well as other attorneys in the case, thought however that a co-defendant in the personal injury case would also be held liable—the driver of the car occupied by the injured person. The jury in the excess case returned a verdict against the insurer for the excess but the trial court granted the insurer judgment notwithstanding the verdict. On appeal, this court held that the insurer's good or bad faith was to be judged by circumstances at the time of negotiations and not by hindsight, and affirmed the trial court's entry of judgment for the insurer.

This court again faced the issue of the sufficiency of evidence of bad faith in *Koppie v. Allied Mut. Ins. Co.,* 210 N.W.2d 844 (Iowa). We held that under the evidence presented, the plaintiff did not generate a jury question on bad faith by showing the insurer's failure to inform the insured of the policy limit of $10,000, its failure to notify the insured of an offer by the injured person to take $5800, and its failure to appeal the judgment for $15,000 in favor of the injured person. We also declined to adopt a rule of strict liability for excess where an insurer rejects a settlement offer within the policy limit.

These decisions provide guidance for evaluating the sufficiency of the present evidence to generate a jury question on bad faith. After examining these decisions and others, we agree with the trial court that Trask did not introduce substantial evidence Kemper acted in bad faith in handling the claim and in not accepting the settlement offer of $25,000. The Reynolds firm may have undervalued the claim prior to the first trial, but substantial evidence of bad faith does not appear. The trial court properly directed a verdict on the second ground of Kemper's motion.

AFFIRMED.