Stephen R. JOHNSON, Appellant,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Appellee.

No. 02–0624.

Supreme Court of Iowa.

Jan. 22, 2004.

Michael K. Bush of Bush, Motto, Creen & Koury, P.L.C., Davenport, for appellant.

J. Michael Weston and Brenda K. Wallrichs of Moyer & Bergman, P.L.C., Cedar Rapids, for appellee.

CARTER, Justice.

Plaintiff, Stephen Johnson, who is suing as the assignee of Eric Jennings, an individual found liable for damages in excess of his liability insurance policy limits in automobile personal-injury litigation, appeals from an adverse judgment in a bad-faith action against Jennings' insurer, American Family Mutual Insurance Company (American Family). As grounds for reversal, the plaintiff urges that the district court improperly (1) instructed that as a requirement for recovery in this bad-faith litigation the plaintiff must show that the insurer had no reasonable basis for refusing to pay its policy limit, (2) allowed expert witnesses to testify with respect to the bad-faith issues, and (3) admitted evidence of plaintiff's medical history that tended to contradict the jury's verdict in the personal-injury litigation. We separately consider these contentions and find them to be without merit. We affirm the judgment of the district court.

On January 29, 1996, an automobile accident occurred between the plaintiff and Jennings. American Family provided liability insurance coverage for Jennings up to a limit of $100,000 per claimant. It wrote to Jennings informing him that it had retained counsel on his behalf. That communication advised Jennings of the $100,000 policy limit applicable to the claim and that he would be personally liable for any judgment in excess of that amount. The letter stated that conflict-of-interest problems might arise between his interests and those of American Family and invited him to obtain his own counsel.

The litigation was handled on Jennings' behalf by attorneys John Stonebraker and Pat Woodward retained by American Family. It was apparent from the outset that the accident had been solely the fault of Jennings and that he had no basis for disputing liability. Discovery disclosed that plaintiff claimed to have developed a disease known as Fibromyalgia as a result of the accident.[1] Stonebraker and Woodward did not seek an independent physical examination of plaintiff. Instead, they relied on his medical records and the depositions of his physicians to diminish his claim. It appeared from plaintiff's medical records and the deposition testimony of physicians who had examined him that three physicians concluded he suffered from Fibromyalgia and four physicians concluded that he did not. Plaintiff's medical records revealed that he had experienced the symptoms relied on for that diagnosis prior to the accident. Plaintiff's deposition testimony indicated that his body did not suffer any significant trauma from the automobile collision.

Plaintiff obtained an expert economic witness. Stonebraker and Woodward discovered that this witness would testify that

---

1. Fibromyalgia is a widespread musculoskeletal pain and fatigue disorder. Symptoms vary, but generally consist of varying degrees of pain, fatigue, sleep disorder, irritable bowels, chronic headaches, sensitivity to odors, noise, bright lights, and foods, memory impairment, dizziness, and impaired coordination. The precise cause of Fibromyalgia is unknown, but it is believed that it may be triggered by traumatic events.

plaintiff had sustained damages in excess of $600,000. Nevertheless, Stonebraker and Woodward evaluated the case at between $10,000 and $12,000 and so advised American Family. In spite of that evaluation, American Family, prior to trial, offered first $25,000 and later $75,000 to settle the case.

Stonebraker and Woodward took the depositions of Dr. Nebbeling and Dr. Lamorgese, both of whom diagnosed the plaintiff with Fibromyalgia and concluded that it was caused by the collision with Jennings. Dr. Eymanson, who had also examined the plaintiff, was deposed and opined that, although the plaintiff suffered from Fibromyalgia, there was no causal link between that condition and the car collision involving Jennings.

Plaintiff agreed to accept American Family's policy limits in settlement of his claim against Jennings. This demand was refused but was countered with an offer to pay $75,000. On the day before trial, Woodward, Jennings, and Jennings' wife consulted for over two hours with respect to the medical evidence, the economic evidence, and the extent of Jennings' exposure. Woodward continued to value the claim at between $10,000 and $12,000.

On the morning of trial, plaintiff's attorneys again offered to settle for the policy limits. Woodward renewed the $75,000 offer, which was rejected. The case proceeded to trial, and the jury returned a verdict in favor of the plaintiff and against Jennings in the sum of $597,014. Other facts that are of significance in this decision will be considered in our discussion of the legal issues presented.

## I. *Whether Plaintiff Was Required to Show that American Family Had No Reasonable Basis for Refusing to Pay Its Policy Limits.*

■ The district court instructed the jury that, in order to recover against American Family on the bad-faith claim assigned to him by Jennings, plaintiff must establish, among other things, that "[d]efendant had no reasonable basis for its judgment that the demand for settlement was not reasonable." That instruction was supplemented by a companion instruction in which the court stated "[t]he insurance company may reject settlement demands which it has a reasonable basis to believe are not reasonable."

Plaintiff urges that these instructions constituted misstatements of the law applicable to a third-party bad-faith claim. He urges that unlike a first-party bad-faith claim, in which a reasonable basis for the insurer's position immunizes it from bad-faith liability, *see Loudon v. State Farm Mut. Auto. Ins. Co.,* 360 N.W.2d 575, 581 (Iowa Ct.App.1984), the duty to protect the assets of its insured precludes a liability insurer from refusing to settle for policy limits simply because the amount of the expected recovery is fairly debatable.

Unfortunately for plaintiff, our decisions on third-party bad-faith actions have established precisely the opposite of what he is urging. In *Henke v. Iowa Home Mutual Casualty Co.,* 250 Iowa 1123, 97 N.W.2d 168 (1959), the seminal third-party bad-faith case in this jurisdiction, we stated:

> If the insurer has exercised good faith in its dealings with the insured and if the settlement proposal has been fully and fairly considered and decided against, based upon an honest belief that the action could be defeated or the judgment held within the policy limits, and in which respect ... counsel have honestly expressed their conclusion, the insurer cannot be held liable even though there is a mistake of judgment in arriving at its conclusion.

*Henke,* 250 Iowa at 1130, 97 N.W.2d at 173. In the later decision of *Ferris v.*

*Employers Mutual Casualty Co.,* 255 Iowa 511, 122 N.W.2d 263 (1963), we stated:

> If the insurer in good faith believed that it could successfully defend, it was not bound to relieve [the insured] of all possible harm that might come from his failure to purchase insurance in an amount that would have protected him from heavy liability.

*Ferris,* 255 Iowa at 518, 122 N.W.2d at 267.

█ We conclude that the *Henke* and *Ferris* cases are controlling on the issue now presented and support the court's instruction that plaintiff had to show there was no reasonable basis for American Family's rejection of the demand for its policy limits. Of course, the reasonableness of an insurer's rejection of a settlement offer within policy limits must be judged from the point of view of one who is exposed to the entire risk. The district court so instructed the jury in keeping with that principle. Because the instructions of the court were not erroneous in the manner urged, plaintiff has shown no basis for reversal of the judgment as a result of the jury instructions.

## II. Whether Expert Witnesses Were Properly Allowed to Testify Concerning Essential Elements of Plaintiff's Bad Faith Claim.

█ By pretrial motion and during trial, plaintiff sought to exclude the testimony of three personal-injury attorneys who testified as expert witnesses and supported the decisions of American Family and its attorneys. The district court allowed the testimony of these witnesses. Plaintiff urges that this was error because bad-faith claims are not negligence actions based on a particular standard of care. Consequently, he argues, the jury had no need to hear expert testimony in order to determine whether American Family met a certain standard.

█ We disagree with plaintiff's characterization of the use of this evidence. The propriety of certain actions or decisions on the part of American Family's attorneys had been placed before the jury as the result of plaintiff's claims. Plaintiff was attempting to show that it was unreasonable to reject his offer to settle for the policy limits. To rebut this contention, American Family called as a witness an experienced personal-injury litigator who had been made familiar with the facts available to American Family and its lawyers. That witness testified that the probability for a verdict in excess of the policy limits was slight. We believe that this was relevant evidence in aid of American Family's defense of the bad-faith claim.

Two other experienced attorneys testified as to the quality of American Family's communication with Jennings concerning the status of settlement negotiations and the potential for a verdict in excess of policy limits. In their opinion, American Family and its lawyers acted properly with respect to both of these areas of communication. The sufficiency of such communication had been expressly challenged by plaintiff in his claim that American Family did not act properly towards its insured. Consequently, this was a matter as to which American Family was entitled to present evidence contradicting plaintiff's claims.

█ The admissibility of opinion evidence, lay or expert, is a matter that is largely entrusted to the discretion of the trial court. *Thavenet v. Davis,* 589 N.W.2d 233, 234 (Iowa 1999); *Sonnek v. Warren,* 522 N.W.2d 45, 50 (Iowa 1994). We conclude that there was no abuse of discretion in allowing the testimony of American Family's expert witnesses concerning the issues that we have discussed.

### III. Use of Plaintiff's Medical History to Cast Doubt on Validity of Jury's Damage Award.

█ Finally, we consider plaintiff's challenge to American Family's use of plaintiff's medical records and expert-witness testimony to show that the jury's damage award was an aberration. Plaintiff argues that this was an improper effort to relitigate the underlying tort claim in order to convince the jury in the bad-faith action that the jury in the personal-injury action had reached an unreasonable result.

The verdict of the jury in the underlying tort litigation was a *fait accompli* for purposes of the bad-faith action. The issue was therefore not the reasonableness of the verdict, but rather, whether a verdict of that size should reasonably have been anticipated. In defending itself against plaintiff's claims that it should have been anticipated, American Family was entitled to produce evidence that militated against a recovery of that magnitude. We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**

All justices concur except WIGGINS, J., who takes no part.