Vernon L. LOUDON, Plaintiff-Appellee,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant,

and

John B. Grier, Defendant.

No. 83–1661.

Court of Appeals of Iowa.

Oct. 23, 1984.

Stephen D. Hardy and Ross H. Sidney of Grefe & Sidney, Des Moines, Iowa, for defendant-appellant State Farm.

John R. Ward and Phillip Vonderhaar of Hedberg, Brick, Tan, Pratt, Ward & Vonderhaar, Des Moines, Iowa, for plaintiff-appellee.

Heard by OXBERGER, C.J., and SCHLEGEL and HAYDEN, JJ.

SCHLEGEL, Judge.

Defendant, State Farm Mutual Automobile Insurance Company (State Farm), appeals from the judgment in favor of plaintiff on an excess judgment claim based on bad faith representation. State Farm argues: (1) there is insufficient evidence to support a finding of bad faith; (2) there is insufficient evidence to find State Farm's actions proximately caused the excess judgment; (3) the trial court improperly relied on irrelevant material in reaching its decision; (4) plaintiff is estopped from bringing this assigned claim because the assignor consented and acquiesced to all actions taken by State Farm; and (5) the trial court incorrectly calculated the interest awarded to plaintiff. We affirm in part and remand.

Plaintiff, Vernon Loudon, was injured while a passenger in the car of his friend, Morey Hill. Loudon suffered a severe head injury when Hill's car veered into a bridge abutment. Treatment for Loudon's injury required bore holes into his skull. He was unconscious for eighteen days and was hospitalized for many weeks. Loudon has permanent injuries: brain damage and memory loss, partial paralysis, loss of balance and coordination, and inability to speak normally and properly. His medical bills exceeded $20,000.

Loudon filed a $200,000 suit against Hill shortly before the statute of limitations expired. State Farm, Hill's insurer, selected John Grier to defend the suit. State Farm also sent a letter to Hill notifying

him of this action. Because Hill's policy limit of $50,000 was less than the petition for $200,000, State Farm's letter informed Hill he had a right to procure his own attorney. Hill met with Grier and decided to keep Grier as his representative.

Although Loudon's petition prayed for $200,000 in damages, he offered from the beginning to settle for $50,000. Loudon later offered to settle the case for $35,000. State Farm did not accept these offers. Both John Grier and the State Farm employees assigned to the case believed that Iowa's guest statute applied and that State Farm was in a nonliability situation. Consequently, when State Farm offered to settle for $10,000, it was doing so only to "buy peace of mind" and not to admit Loudon's claim had any legitimacy. Loudon rejected the $10,000 offer. Hill was informed of these settlement negotiations, and with Grier's advice consented to State Farm's decision to go to trial.

State Farm filed a motion for summary judgment, urging that the guest statute applied and rendered State Farm not liable. Judge Seiser denied the motion. At the close of Loudon's case, State Farm moved for a directed verdict, urging that the guest statute applied. Judge Missildine denied the motion. The jury decided the guest statute did not apply, and awarded Loudon $200,000. Judge Missildine then granted State Farm's motion for a directed verdict. On appeal, the Iowa Supreme Court held the guest statute did not apply as a matter of law and reinstated the verdict. *Loudon v. Hill*, 286 N.W.2d 189 (Iowa 1979).

State Farm paid the policy limit of $50,000. Hill was then left owing $150,000. He could not pay the judgment, so he consulted Grier. Grier referred Hill to an attorney who would file a bankruptcy petition for Hill. However, Hill decided after consulting with that attorney that filing for bankruptcy would be undesirable. He then assigned any claim he had against State Farm to Loudon in full satisfaction of the deficient judgment.

Loudon filed this excess judgment action and a trial was held before the court. The trial court found State Farm had acted in bad faith and ruled in favor of Loudon. State Farm has appealed.

I. *Evidence of Bad Faith.* State Farm asserts there is insufficient evidence to support a finding of bad faith. In reviewing this argument we do not need to set forth a complete and comprehensive definition of bad faith. "[B]ad faith is always a fact question and the courts have struggled with definitions." 7C J. Appleman, *Insurance Law & Practice* § 4712, at 436 (1979). The Iowa Supreme Court in *Kooyman v. Farm Bureau Mutual Insurance Co.*, 315 N.W.2d 30 (Iowa 1982), defined bad faith in the negative. "[G]ood faith or bad faith in this context does not connote the absence or presence of positive misconduct of a malicious, illegal, or immoral nature . . . ." *Id.* at 34. " 'Bad faith' under the circumstances of this case refers simply to the absence of good faith required by the implied contract." *Id.* (citing 7C Appleman, *supra* § 4712, at 439).

■ Far more helpful than the definition in *Kooyman*, we believe, is the rule that admissible evidence of bad faith is "evidence of negligence which shows an indifference to or disregard of the interests of the insured." *Id.* at 33 (citing cases). Failure to give proper consideration to the interests of the insured "may be an element of bad faith in a suit against the insurer." *Id.* (quoting *Henke v. Iowa Home Mutual Casualty Co.*, 250 Iowa 1123, 1130, 97 N.W.2d 168, 173 (1959)). Therefore, we examine the evidence in this case to determine whether it is sufficient to support a finding that State Farm was indifferent to or ignored the interests of its insured, Morey Hill.

■ 1. *Duties of the insurer.* The interests of the insured vary in each case. However, the courts have recognized and protected certain interests, either by implying a duty in the insurance contract or by establishing a common law duty.

A covenant is implied in an insurance contract that neither party will do any-

thing to injure the rights of the other in receiving the benefits of the agreement. This covenant includes a duty to settle claims without litigation in appropriate cases.

*Kooyman,* 315 N.W.2d at 33 (citations omitted). The insurer has a duty to inform the insured of settlement possibilities. *See id.* at 36. Failure of an insurer to advise its insured of the status of settlement negotiations is indicative of indifference and thus of bad faith. *Henke v. Iowa Home Mutual Casualty Co.,* 250 Iowa at 1131–32, 97 N.W.2d at 179; 7C Appleman, *supra* § 4712, at 432, 444, 470, 487 ("It is not sufficient to merely be in contact with the insured; the insurer 'must be careful to give its insured full and accurate information as to settlement possibilities.'"); Annot., 40 A.L.R.2d 168, at 216 (1955) (failure to advise insured of compromise offer as evidence of bad faith).

■ The insurer also has a duty to advise the insured "of the expected consequences of his failure to settle." *Kooyman,* 315 N.W.2d at 36. "Failure to advise of the probable *effects* of such excess liability may be indicative of bad faith." *Id.* (emphasis in original).

Resolution of this case depends in part on how thoroughly the consequences of failure to settle must be explained to the insured. We find the following passage from *Kooyman* to be on point.

> In *Lange v. Fidelity & Casualty Co.,* 290 Minn. 61, 185 N.W.2d 881, 885–86 (1971), it was similarly stated:
>
> ... Defendant was obliged to advise him *in detail* as to the implications of an excess verdict.
>
> This obligation of counsel retained by the insurer is not fulfilled merely by an explanation which amounts to no more than assurances to the insured that his interests are being zealously and faithfully protected by experienced counsel, but rather by laying bare the truth—not only of the potential consequences of a deficiency judgment but of the potential conflict between the interests of the carrier and the in-

sured—in the manner in which the insured would be advised if he consulted private counsel.

> *See also* 7C Appleman, *supra* § 4712, at 444, 478 (insurer "must investigate the total claim properly and keep the insured reasonably well informed of the progress of the case, including settlement offers, and must explore the insured's capability to contribute to the settlement."; and an insurer, "after making its evaluation [of financial exposure] must inform the insured *in detail* of the potential consequences of a deficiency judgment and of the conflict between itself and the insured.") (Emphasis added.)

315 N.W.2d at 36. We therefore examine the evidence in this case to determine whether State Farm informed Hill, *in detail,* of the potential consequences of failure to settle and a deficiency judgment.

■ 2. *State Farm's actions.* The evidence in this case is sufficient to support a finding that State Farm failed to advise Hill in detail of the consequences of nonsettlement and a deficiency judgment. In this law action findings of fact cannot be disturbed on appeal if supported by substantial evidence. Iowa R.App.P. 14(f)(1). Evidence is substantial when a reasonable person's mind would find it adequate for reaching a conclusion or decision. *Iowa State Fairgrounds Security v. Iowa Civil Rights Commission,* 322 N.W.2d 293, 296 (Iowa 1982). The evidence in this case is adequate for reaching a conclusion that State Farm breached its duty to inform Hill of the expected consequences of a failure to settle.

In order to inform Hill in detail of the consequences of nonsettlement and the potential effect of a deficiency judgment, State Farm would first have to determine whether a deficiency judgment could arise. However, no such determination was made. State Farm's attorney, John Grier, testified he never evaluated whether Loudon's injuries would carry a verdict that exceeded policy limits. Grier also testified that in evaluating the case he did not consider who would pay the potential judgment. He

failed to take these actions even though, as he admitted at trial, the facts of Loudon's case formed an excellent basis for a finding of negligence and an award exceeding policy limits if the guest statute did not apply.

Grier also failed to inform Hill in detail of Hill's potential options if an excess judgment was returned. It is true that Grier did mention the options in his first meeting with Hill. However, the evidence indicates any discussion of those options was brief. Grier mentioned the possibility that Hill might be able to work out a settlement with Loudon, who was apparently still on friendly terms with Hill. But Grier testified that he did not give a lot of thought to how Hill could accomplish such a settlement, and Hill testified Grier did not inquire about the extent of Hill's assets.

Grier also told Hill that a suit against State Farm and filing for bankruptcy were other options. Not surprisingly, he advised Hill that a suit against State Farm would have little success. The testimony of Grier and Hill also indicates Grier's explanation of the bankruptcy option did not include information about the negative effects of declaring bankruptcy.

After the supreme court reinstated the verdict for Louden, Hill had another meeting with Grier. Grier briefly reviewed Hill's options and then advised Hill to file for bankruptcy. He also told Hill that a different attorney should handle the bankruptcy. After consulting with another lawyer, Hill decided not to file for bankruptcy.

■ The evidence we have summarized above supports a finding that State Farm did not adequately advise Hill of the expected consequences of failing to settle. Failure to advise of the probable effects of the resulting excess liability is indicative of bad faith. *Kooyman,* 315 N.W.2d at 36.

We also note that the evidence of State Farm's approach toward settling this case is adequate to reach a conclusion that State Farm was indifferent to or disregarded the interests of Hill. It shows that State Farm never seriously considered settling Hill's case for more than a small fraction of the

policy limit. Approximately four months before the trial was scheduled to start, Grier wrote a letter to State Farm claims superintendent Arlyn Hesse that "this matter is obviously going to go to trial." At the time Grier wrote that letter Loudon had an outstanding offer to settle for the policy limit of $50,000. Two months later Loudon lowered his demand to $35,000. Grier, however, did not believe Loudon's claim was worth that much money. Instead, he proposed a counteroffer of $10,000 to "buy peace of mind."

Grier kept State Farm informed of all settlement negotiations. State Farm agreed with the way Grier conducted the settlement negotiations. However, we must note that claims supervisor Hesse did not have authority to authorize a settlement of more than $6,000. Moreover, Hesse's immediate supervisor did not have authority to settle claims for over $20,000. Any claims over that amount had to be authorized by a committee and, in some instances, the general claims office of State Farm in Bloomington, Illinois. No committee ever considered Loudon's offer to settle for $35,000.

State Farm refused to submit the $35,000 settlement offer to a committee even though State Farm knew that Loudon had incurred over $20,000 in actual medical expenses and had suffered severe permanent injuries. State Farm also knew Loudon had an excellent chance of proving negligence if the guest statute did not bar his claim. Moreover, the evidence shows the failure to submit the offer to a committee may have been in violation of State Farm's internal policy.

The reason that the offer was not submitted to a committee was that Grier and Hesse had not "evaluated" Loudon's claim as worth $35,000. They believed the guest statute was applicable and that the case was properly evaluated as one of nonliability. Both persisted in this belief even after their theory of guest statute applicability was not upheld on a motion for summary judgment, a motion for a directed verdict, or by the jury verdict. State Farm did not

attempt to settle the case after any of these setbacks.

We believe State Farm's actions regarding settlement, when coupled with Grier's testimony that he never evaluated whether a verdict would exceed policy limits and did not consider who would pay a judgment, are sufficient to support a finding that State Farm was indifferent to or disregarded Hill's interests in the settlement negotiations.[1]

3. *State Farm's arguments.* State Farm's brief has framed the issues differently from the way we analyzed them above. At the heart of the difference is State Farm's contention that it could satisfy the duty to act in good faith by acting and evaluating Loudon's claim reasonably. State Farm contends that its reliance on the applicability of the guest statute was reasonable. It argues that if Hill was harmed at all, the harm was the result of an error in judgment on the guest statute. State Farm further argues such harm is not actionable because, "More than error in judgment is required to establish bad faith, and it is said that an insurer cannot be required to predict with certainty the result of a closely contested claim." *Kooyman,* 315 N.W.2d 35. In support of this line of argument, State Farm cites *Kohlstedt v. Farm Bureau Mutual Insurance Co.,* 258 Iowa 337, 139 N.W.2d 184 (1965), in which the insurance company was held not liable for erroneously relying on the applicability of the guest statute.

We reject this argument. State Farm was representing two parties with potentially adverse interests. In doing so, it undertook the heavy obligation of representing both parties with the proper degree of skill, judgment, and consideration for the welfare of each. We cannot agree that such an obligation can be simplified to a mere matter of reasonably judging the "re-

sult of a closely contested claim." Representation of two parties demands adequate consideration of the interests of both the insurer and the insured. *See Kooyman,* 315 N.W.2d at 33, 35–36. As we stated above, the evidence is sufficient to show that State Farm failed to give adequate consideration to its insured. State Farm's reliance on the applicability of the guest statute, even if reasonable, does not change our conclusion.

We realize that State Farm and its attorney Grier, in deciding to litigate, viewed the claim as one for $200,000, rather than one for the policy limits of $50,000. We also realize that in *Kooyman* it is stated:

> In assessing good faith in such circumstances, the test is whether the insurer has approached the matter of settlement as if there were no policy limits: "when it does so, it views the claim objectively and renders equal consideration to the interests of itself and of the insured."

315 N.W.2d at 34 (quoting *Koppie v. Allied Mutual Insurance Co.,* 210 N.W.2d 844, 848 (Iowa 1973)). We believe, however, that the evidence shows that State Farm did not give equal consideration to the interests of both parties simply by considering the claim to be one for $200,000.

State Farm is an insurance company that has vast resources when compared to its insured Hill. Losing a case and being subjected to a $200,000 judgment would put no great financial strain on State Farm. State Farm has good reasons for trying to keep its claims payments to a minimum. Thus, we cannot say it would be unreasonable for State Farm to litigate this matter. Hill, however, has no major financial resources, and a $200,000 judgment could be catastrophic to him. On the other hand, settlement within the limits of the insurance policy would not harm him in any way.[2] In

1. We have examined the record and find no direct evidence that State Farm willfully or maliciously acted against Hill's interest. We note, however, that the evidence included a State Farm memo which advises employees to build up the files with self-serving correspondence

and to avoid articulating certain opinions that can be used as evidence of bad faith. Neither State Farm nor Grier acted inconsistently with that advice.

2. We compare the effects upon the parties of a $200,000 judgment only to illustrate the parties'

short, it is apparent that the interests of the two parties conflicted even when State Farm viewed its potential liability as $200,000. As we stated above, the evidence sufficiently shows that State Farm did not give adequate attention to the interests of its insured.

State Farm also argues that Loudon cannot prevail because he did not present expert testimony showing that State Farm or Grier acted unreasonably. We reject this argument. No Iowa case has ever held such expert testimony is necessary. Moreover, we find it unnecessary in this case because the evidence shows State Farm and Grier were indifferent to or disregarded the interests of Hill.

■■■ II. *Proximate Cause.* State Farm contends Loudon did not present evidence sufficient to support a finding that State Farm's actions were the proximate cause of the excess judgment. State Farm advances two arguments on this point: (1) Loudon failed to present specific evidence that different actions on the part of State Farm would have resulted in a settlement within the policy limits, and (2) State Farm's actions could not be the proximate cause of the excess judgment because Loudon cut off settlement negotiations. We reject both arguments.

The court in *Kooyman* stated:

There was evidence here that while Van Wyk had been advised the verdict would likely be "around $800,000," he was apparently never advised of the consequences to him personally if a verdict of that size was returned by the jury, or if the other parties would settle their part of the case (which they ultimately did) and the trial would proceed against him alone. He was never advised that a verdict of the expected size would wipe him out financially. *It is conceivable, and a jury could so find, that if he had been advised of these matters he would have accepted the claimant's last offer of set-*

*tlement and salvaged some of his net worth.*

315 N.W.2d at 36 (emphasis added). The evidence presented here by Loudon is of the same nature as the evidence presented in *Kooyman*. It was sufficient for a finding of causation in *Kooyman* and is sufficient for a finding of causation in this case.

■■■ State Farm's second argument is based on the fact that Loudon's attorney, when informed of State Farm's offer to settle for $10,000, angrily replied, "F____ you," and hung up the phone. Loudon's attorney also sent a letter rejecting that offer. State Farm claims those actions constituted a termination of all settlement negotiations, and that it would have been impossible to settle the case within policy limits. Although not stated as such, State Farm's argument essentially is that the actions of Loudon's attorney constituted a superseding cause. When there is a factual dispute or room for reasonable difference of opinion on superseding cause, the question should be decided by the factfinder. *See Haumersen v. Ford Motor Co.,* 257 N.W.2d 7, 15 (Iowa 1977). Here the trial court as factfinder decided the actions of Loudon's attorney were not a superseding cause. That decision is binding on us if supported by substantial evidence. Iowa R.App.P. 14(f)(1).

■■■ We find there is substantial evidence to support that decision. Loudon's attorney from the outset tried to settle the case within the policy limits. He twice offered to settle for $50,000 and later reduced his demand to $35,000. Such action was not unreasonable when viewed in light of Loudon's actual medical expenses in excess of $20,000 and severe and permanent injuries. A reasonable person could conclude Loudon's attorney would have been receptive to a settlement offer that tried to at least cover medical expenses, even after he rejected the offer of $10,000. Moreover, he had a duty to report any settlement

conflict of interests. We do not here, or elsewhere in this opinion, imply that the insured should be favored over the insurer.

offers to his client, who may have decided to accept.

III. *Reliance on Memo 279.* State Farm argues that the trial court relied on a part of State Farm's claimsbook, memo 279, to establish the legal standard of bad faith in this case. This argument is erroneous. We have examined the portion of the trial court's opinion that State Farm says supports its argument. We believe State Farm has taken one statement of the trial court out of context and misconstrued it. The trial court was not referring to the legal standard of bad faith in that statement; rather, it was stating, as a finding of fact, that State Farm had failed to prove that Loudon's claim had been submitted to a claim committee as required by memo 279. Our interpretation is supported by the presence of the statement in question in the "findings of fact" portion of the decree. In the "conclusions of law" portion of the decree, the trial court applied the legal standards set forth in the Uniform Jury Instructions. State Farm's argument is without merit.

 State Farm also argues memo 279 was irrelevant and immaterial, and that its admission into evidence was error. However, the trial court's decision never specifically relied on memo 279 in reaching its decision. Nor do we find that memo 279 is an essential part of the evidence showing State Farm acted in bad faith. Therefore, if admission of memo 279 was error, it was harmless error.

IV. *Estoppel.* State Farm argues Loudon is estopped from bringing this claim because Hill, the assignor of the claim, consented to all actions of State Farm. We disagree.

 The trial court specifically found that Hill had not acquiesced in and consented to all of State Farm's defense decisions. This finding of fact is supported by substantial evidence. Hill did not understand the concept of negligence. Even though Grier and Hesse admitted at trial that driving a car into a bridge abutment is most likely negligent, Hill's attitude was that he

was not at fault for doing so. He described the collision as an "accident." Moreover, the evidence does not show that Hill fully understood the amount of his potential liability or the chances that such liability would be imposed. State Farm and Grier never explained those factors in detail. Instead, they took action which was consistent with Hill's preconception that he should not be liable for an accident. The trial court had the opportunity to observe the demeanor of all the witnesses, and specifically relied on those observations in finding that Hill did not consent. We should defer to such observation instead of forming our own conclusion from the cold record. *See A & R Concrete and Construction Co. v. Braklow,* 251 Iowa 1067, 1071, 103 N.W.2d 89, 91 (1960).

State Farm contends it is error to hold that an insured must have an understanding of his total situation before the insured can acquiesce to the insurance company's actions. The cases cited, however, do not support this proposition. In *Kohlstedt v. Farm Bureau Mutual Insurance Co.,* where acquiescence was recognized as a defense to a bad faith suit, the court only applied the doctrine to issues agreed on by the plaintiff's own attorney. The court stated that, "where [the personal attorney] acquiesced or agreed with procedures to be taken involving judgment, plaintiff cannot now be heard to say such were unreasonable or constitute bad faith." 258 Iowa at 341, 139 N.W.2d at 186. The other case cited by State Farm, *Ferris v. Employers Mutual Casualty Co.,* 255 Iowa 511, 122 N.W.2d 263 (1963), does not even mention the defense of acquiescence. The reference to plaintiff's agreement in that case arises in the context of an alleged failure to inform the insured of a compromise offer. *Id.* at 520, 122 N.W.2d at 268. Moreover, were we to agree with State Farm on this issue, we would be acting contrary to *Kooyman,* where the court indicated the insurer must inform the insured in detail of the expected consequences of his failure to settle. 315 N.W.2d at 36.

V. *Interest.* The trial court awarded interest on its decree at a rate of 10% from

January 18, 1980. State Farm appeals this award. We find the interest award to be erroneous.

 Iowa Code section 535.3 governs the accrual of interest on judgments. That section provides for the accrual of interest at the rate of 10% from the date of commencement of the action. Iowa Code § 535.3 (1983). The petition in this case was filed on March 21, 1980. Interest at the rate of 10% is due from that date, even though the present version of section 535.3 was not then in effect. *See Janda v. Iowa Industrial Hydraulics, Inc.,* 326 N.W.2d 339, 343–45 (Iowa 1982).

Loudon's petition for relief asked that State Farm be required to pay the $150,000 deficiency from the prior judgment and accrued interest. The trial court's judgment granted that relief. The accrued interest portion of the judgment shall be calculated from January 18, 1980, to the date the petition was filed—March 21, 1980. Such interest accrued at the legal rate of 7%. Iowa Code § 535.3 (1979).

The interest that accrued up to March 21, 1980, shall be added to the $150,000 principal, and the sum of those two amounts constitutes the judgment on which interest shall accrue at the 10% rate. We remand for modification of the interest award.

AFFIRMED IN PART AND REMANDED.